**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TERRELL HARRIS,

          Plaintiff,

          v.

HUDSON COUNTY JAIL, et al.,

          Defendants.

Civil Action No.14-6284 (JLL)

**OPINION**

**LINARES**, District Judge:

Plaintiff, Terrell Harris, filed a complaint against Defendants, Hudson County Jail,[1] Director Oscar Aviles, Deputy Director Castillo, Lieutenant Yurecko, Sergeant Keisiah Ford, Sergeant Matos, Officer Murtha, Hudson County Jail Medical Department, and Jane Doe, on October 9, 2014. (ECF No. 1). On March 10, 2015, This Court granted Plaintiff's application to proceed *in forma pauperis*. (ECF No. 3). At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. Also before the Court is Plaintiff's application for pro bono counsel (ECF No. 2). For the reasons set out below, this Court dismisses all claims as to Defendant Hudson County Jail and Plaintiff's vicarious liability claim against Defendant Medical Department with prejudice, dismisses Plaintiff's supervisory liability

---

[1] This facility would be more properly named as the Hudson County Correctional Center.

claims against Defendants Aviles and Castillo without prejudice for failure to state a claim on which relief can be granted, but allows the following claims to proceed:  Plaintiff's conditions of confinement claim against Defendants Ford and Matos, and, based on supervisory liability, Yurecko;  and  Plaintiff's deliberate indifference to serious medical needs claims against Defendants Matos, Murtha, and Jane Doe.   Finally, Plaintiff's application for pro bono counsel is denied.

## I.  BACKGROUND

The following facts are drawn from the allegations contained in Plaintiff's complaint. (ECF No. 1).[2]  Plaintiff is a pre-trial detainee currently incarcerated at the Hudson County Jail. (ECF No. 1 at 25).   He was originally classified as a maximum tier inmate on the basis of the crimes with which he is charged.   (*Id.*).   On or about April 15, 2014, Plaintiff tore the Achilles tendon on his right ankle during a game of basketball.   (*Id.*).   On April 29, 2014, Plaintiff underwent surgery to reattach the tendon, after which he was transferred to the Jail's infirmary. (*Id.*).   Plaintiff alleges that while he was in the infirmary, he was able to have ready access to medical services and was also permitted considerable daily recreation time as well as ready access to showers and the ability to call his family.   (*Id.* at 26).

On or about July 9, 2014, Plaintiff was moved, on the order of Defendant Ford, to the medical pod/special needs unit designated A-1-W.   (*Id.* at 26-27).   Upon arrival, Plaintiff, who

---

[2]  As the documents which Plaintiff attached to his complaint lack page numbers, all page numbers used in reference to ECF No. 1 refer to the clerk's PageID number.

required crutches or a wheelchair to move following his surgery, was placed into a small cell with another inmate. (*Id.* at 27). As both Plaintiff and the other inmate were both restricted to a bottom bunk, guards placed a second cot into the cell for Plaintiff's use. (*Id.* at 27-28). Plaintiff was also informed that he would be placed on lock-down status while in A-1-W, wherein he would be locked in his cell for twenty two hours a day with two hours of potential recreation permitted. (*Id.* at 27). Plaintiff alleges that the placement of the cot into the cell severely limited the amount of open space, permitting only a two foot by three foot area in which either Plaintiff or his cellmate could stand while locked in their cell. (*Id.* at 28). Plaintiff also alleges that the foot of his bed was only six to eight inches from the cell's toilet. (*Id.*).

Plaintiff alleges that the cramped conditions of this cell caused him considerable difficulties given his need for crutches to walk. Specifically, Plaintiff alleges that he repeatedly struck his injured foot on either the bed or toilet while repositioning himself. (*Id.*). Plaintiff also alleges that, on at least one occasion,[3] his crutches became caught on the frame of his cot, causing him to lose his balance and strike his head on the walls or doorway of his cell. (*Id.* at 29, 33). Plaintiff alleges that during this incident, he also struck his surgical scar which began to bleed, causing significant pain. (*Id.* at 33).

On July 10, 2014, Plaintiff and his cellmate were transferred, by order of Defendant Ford, to a different cell in the A-1-W unit. (*Id* at 29). Plaintiff and his cellmate were transported to the new cell by Defendants Matos and Yurecko. (*Id.*). Plaintiff alleges that this new cell was

---

[3] Plaintiff's complaint repeats his allegations multiple times, thus it is difficult to discern whether there were multiple such incidents, or whether Plaintiff simply reiterates and expands on his original assertion that he fell and injured himself. The lack of dates or other identifying features as to the fall incident further compounds this lack of clarity.

"designed for one person in a wheelchair" and contained only a single bunk and a handicapped toilet. (*Id.*). Following alterations by the officers, the metal framed cot was placed into the new cell at a ninety degree angle to the already present bed, providing Plaintiff and his cellmate an area of two and a half by six feet in which to stand or walk while locked inside the cell. (*Id.*). Plaintiff also alleges that, with the new set-up, the foot of his bed was twelve to fourteen inches from the cell's toilet. (*Id.*).

Plaintiff alleges that, while on lock-in status in unit A-1-W, he missed several of his scheduled medical visits. (*Id.* at 29-30). According to the complaint, inmates housed in A-1-W need an escort in order to attend these medical visits. (*Id.* at 30). While Plaintiff appears to allege that these missed appointments continued throughout his time in A-1-W, he specifically states that, following an incident wherein another inmate attacked him without provocation on July 14, 2014, his medical visits became more sporadic. (*Id.* at 30-31). Apparently, after the unprovoked attack, Plaintiff would notify Defendant Murtha of his need to see medical personnel to take care of his surgical wound and have his bandages changed. (*Id.* at 31). The officer would then tell Plaintiff that medical had been informed and the officers were waiting on an escort that would ultimately never arrive. (*Id.*). Plaintiff alleges that, when asked, medical personnel informed him that no such call had ever been made. (*Id.*). In any event, if Plaintiff repeated his requests, he alleges that Officer Murtha would tell him that "'someone' in medical told [Murtha that Plaintiff] was good and didn't need any further medication or care." (*Id.*). Plaintiff states that, when he confronted the officer regarding the issue, Defendant Matos was summoned, but the Sergeant looked at Plaintiff and left without taking any action. (*Id.*).

At some point during Plaintiff's surgical recovery, his ankle wound became infected. (*Id.*

4

at 30-31).   Although the complaint is unclear as to when exactly the infection occurred, Plaintiff was apparently taken to the hospital for physical therapy on July 10, 2014.   (*Id.*).   During that appointment, hospital staff noticed the smell coming from Plaintiff's surgical scar, and discovered that a serious infection had developed which might require further surgery if it worsened.   (*Id.* at 31).   In response, Plaintiff was prescribed a stronger antibiotic than that he had been taking following his surgery and the doctor also ordered that Plaintiff's bandage be changed daily.   (*Id.*). Plaintiff also alleges that the doctor told him the cell conditions in which he was housed (prior to the July 10, 2014 reassignment) were not conducive to his healing.[4]   (*Id.*).

Following his return and reassignment on July 10, 2014, Plaintiff alleges that he continued to have problems getting medical attention for his surgical wound.   (*Id.* at 34).   Plaintiff alleges that bandage changes usually accompany an inmate's shower, but because his shower time took place in the afternoon and bandages were changed by a single nurse in the morning, Plaintiff's bandage often went unchanged.   (*Id.* at 34-35).   Plaintiff admits, however, that in response to requests for medical aid, Officer Murtha brought a nurse to his cell who provided Plaintiff an ointment to rub onto the wound.   (*Id.* at 35).   Plaintiff also states that, when he was informed of the requests for medical aid, Sergeant Matos ignored Plaintiff's request for a bandage change visit to medical, instead telling Officer Murtha that he had called medical and had been told that Plaintiff had received a bandage change that morning.   (*Id.*).

Plaintiff's final set of allegations arise out of problems he had with one of the jail's nurses

---

[4] It is possible that the doctor's reaction to the situation was responsible for the move of Plaintiff and his cellmate, but the complaint is unclear on that point, instead alleging that Plaintiff's lock-in status and move were the result of some personal animus Defendant Ford felt towards Plaintiff's cellmate.   (*See* ECF No. 1 at 38-39).

on July 24, 2014.   On that date, Plaintiff alleges that Defendant Jane Doe, a nurse who hands out medication during the evening, refused to help change Plaintiff's bandages telling Plaintiff instead that bandage changing was the responsibility of a different nurse during morning hours.   *Id.* at 38-39).   When the situation was brought to Officer Murtha's attention, he apparently told Plaintiff that they had already discussed that issue and he would not deal with it again.   (*Id.* at 38).

Plaintiff also apparently made efforts to inform jail staff about his situation and request remedy, none of which apparently produced any results.   On July 17, 2014, Plaintiff sent a letter to Sergeant Ford asking for a transfer or, at least, clarification as to why he was on lock-up status. (*Id.* at 46-50).   On July 23, 2014, Plaintiff wrote instead to Lt. Yurecko requesting clarification of the reason for his lock-up status and for information on how to get off of that status.   (*Id.* at 53-54).   On July 30, 2014, Plaintiff sent another letter, this time to Deputy Director Castillo.   (*Id.* at 55-58).   In that letter, Plaintiff informed the deputy director regarding his situation, including his health concerns, medical issues, lock-up status, and the pain and suffering he had allegedly suffered as a result of his cell situation.   (*Id.*).   Finally, on August 12, 2014, Plaintiff wrote to Director Aviles, again summarizing his lock-up status and alleged pain and suffering which resulted therefrom.   (*Id.* at 59-62).   In this final letter, Plaintiff also requested compensation for his suffering and that the Director inform him of the basis for his placement on lock-up status. (*Id.*).   Finally, Plaintiff also threatened suit if no action was taken by Director Aviles.   (*Id.*). After apparently not receiving a response to his satisfaction, Plaintiff thereafter filed the instant complaint on October 9, 2014.[5]

---

[5] Plaintiff also includes in his complaint several letters he wrote to various law firms requesting that they represent him in his suit, to no avail.   The Court presumes these letters were intended

## II.  DISCUSSION

### A.  Legal Standard

District courts must review complaints in those civil actions in which a litigant is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B),  seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e.  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  As Plaintiff brings his claims *in forma pauperis* and against governmental employees, his complaint must be screened pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive *sua sponte* screening for failure to state a claim[6], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

to accompany Plaintiff's application for pro bono counsel.  (*See* ECF No. 1 at 63-80; ECF No. 2).

[6]      "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).   Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

## B.   Analysis

Plaintiff asserts that, based on the alleged facts recounted above, Defendants violated his Fourteenth Amendment Rights and are thus liable to him under 42 U.S.C. § 1983.   42 U.S.C. § 1983 provides "private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013).   To assert a § 1983 claim, Plaintiff must show that he was a deprived of a federal constitutional or statutory right by a state actor. *Id.*   In evaluating Plaintiff's claims, the Court must identify the contours of the underling right Plaintiff claims was violated and determine whether Plaintiff has properly alleged an actual violation of that right. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). Based on the facts and allegations in his complaint, this Court construes Plaintiff as asserting claims that Defendants Ford and Matos confined him in conditions which amount to improper punishment in violation of Plaintiff's Fourteenth Amendment Due Process rights; that Defendants Yurecko, Aviles, and Castillo knew of and acquiesced to that violation of Plaintiff's Fourteenth Amendment rights; and that Officer Murtha, Sergeant Matos, Jane Doe, and, by extension, the

8

Jail's medical department were deliberately indifferent to Plaintiff's serious medical needs.[7]

### 1. Plaintiff's Claim against the Hudson County Jail

Plaintiff's names as his first Defendant the Hudson County Jail.   Although Plaintiff so names the Jail, he asserts no direct claims against the jail itself, instead asserting wrongs committed by its employees.   In any event, Claims for relief pursuant to 42 U.S.C. § 1983 can only be brought against "persons."   A County jail, such as the Hudson County facility, is not a person amenable to suit under the statute.   *See Kitchen v. Essex Cnty. Corr. Facility*, No. 12-2199, 2012 WL 1994505, at *3 (D.N.J. May 31, 2012); *Ingram v. Atl. Cnty. Justice Facility*, No. 10-1375, 2011 WL 65915, at *3 (D.N.J. Jan. 7, 2011); *see also Marsden v. Federal B.O.P.*, 856 F. Supp. 832, 836 (S.D.N.Y. 1994); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *McCoy v. Chesapeake Corr. Cntr.*, 788 F. Supp. 890, 893-894 (E.D. Va. 1992).   The correct entity subject to suit under § 1983 for claims against the jail would be the county which operates the facility.

---

[7] Although Plaintiff includes in his facts the unprovoked attack by another inmate during movement from medical back to his cell, he does not appear to assert a failure to protect claim against the jail or other Defendants for that incident.   As Plaintiff's complaint states that the attack occurred with no apparent warning or purpose, such a claim would likely fail as Plaintiff does not plead that the officers were deliberately indifferent to the apparently unknown threat this other prisoner posed to Plaintiff.   *See Paulino v. Burlington Cnty. Jail*, 438 F. App'x 106, 109 (3d Cir. 2011) (requiring that pre-trial detainees claiming a failure to protect show that the officials who allegedly so failed acted with at least deliberate indifference).   As in *Paulino*, Plaintiff provides no allegations which, taken as true, would support a conclusion that jail officials had any indication that this unknown and random attacker posed any threat to Plaintiff to which Defendants could have been deliberately indifferent.   *See Id.*

[8] The Court does not refer to these claims by the count numbers used in Plaintiff's complaint as the complaint contains repetitious counts which re-raise the same claim numerous times with slightly different wording.   Counts 1, 3, 5, and 6, for example, all refer to Plaintiff's conditions of confinement claim.   (ECF No. 1 at 15-19).

See *Kitchen*, 2012 WL 1994505; *Vance v. Cnty. Of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) (the county "Department of Corrections is an agency of the County . . . [t]he County is a proper defendant in a § 1983 claim, an agency of the County is not").   As such, to the extent that Plaintiff asserts a claim against the jail, that claim must be dismissed with prejudice.

## 2.   Plaintiff's supervisory liability claims against Director Aviles, Deputy Director Castillo, Lieutenant Yurecko, and the Jail's Medical Department

In his complaint, Plaintiff names as Defendants Aviles, Castillo, Yurecko, and the Hudson County Jail Medical Department.   With the exception of the Medical Department which is named in place of the employees responsible for Plaintiff's care, Plaintiff names these individuals as Defendants under the theory that, as supervisors, they are liable for the actions of their subordinates to whose actions they have acquiesced.   Government officials may not be held vicariously liable for the actions of their subordinates under a *respondeat superior* theory of liability in a §1983 action.   *Iqbal*, 556 U.S. at 675-76.   Municipalities and other municipal defendants likewise not subject to vicarious liability under § 1983.   *Id.* at 676; *see also Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).   As claims brought pursuant to § 1983 do not permit vicarious liability, a plaintiff must "plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

While vicarious liability is impermissible in a § 1983 claim, supervisors may be held liable under certain circumstances.   Specifically, supervisors may be held liable where they either "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [a] constitutional harm," or "participated in violating the plaintiff's

10

rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *see also Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-320 (3d Cir. 2014); *Queer v. Westmoreland Cnty.*, 296 F. App'x 290, 295 (3d Cir. 2008); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). To make out a supervisor liability claim based on acquiescence, Plaintiff must show that the supervisor had authority over a subordinated, had actual knowledge of a violation of a plaintiff's rights, and then acquiesced to that violation. *Queer*, 296 F. App'x at 295; *Rode*, 845 F.2d at 1207; *See also Third Circuit Model Jury Instructions for Civil Rights Claims Under Section 1983*, Model Instruction 4.6.1 (October 2014) ("As to acquiescence, '[w]here a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e. tacitly assented to or accepted) the subordinate's conduct.' *Robbinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) [*abrogated in part on other grounds, Burlington N. and Sante Fe Ry. Co. v. White*, 548 U.S. 53 (2006).]"). To recover on such a claim, a plaintiff must also show that the supervisor acted with the requisite mental state, which varies based on the tort alleged. *Barkes*, 766 F.3d at 319-20. In a conditions of confinement claim, the requisite mental state is deliberate indifference. *Id.* at 319.

Allegations of knowledge and acquiescence must be alleged with particularity. *Rode*, 845 F.2d at 1207. Federal Rule of Civil Procedure 8(a)(2) requires that plaintiffs set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." Detailed factual allegations are not required by the rule, but a plaintiff must supply more than "an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.   At the very least, a complaint must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation omitted).

Turning first to the Jail's medical department, Plaintiff's claims appear to be based solely on a *respondeat superior* form of vicarious liability.   The only member of the department against which Plaintiff pleads specific facts in regard to the failure to treat is the nurse Jane Doe. Although Plaintiff asserts that the department is responsible for changing dressings and did not do so in his case, his pleadings with regard to Officer Murtha and Sergeant Matos make clear that this failure is either the fault of the officers for failing to properly request an escort for Plaintiff to medical, or the fault of the evening nurse who Plaintiff names as a Jane Doe Defendant.   Plaintiff has pled no specific acts injurious to his constitutional rights which were undertaken by the organization which operates the jail's medical department or any specific individual other than the Jane Doe, and as such any claim asserted against the department which cannot act in and of itself (or, more properly, the organization who operates the facility on behalf of Hudson County) as pled could only arise out of a theory of vicarious liability.   Plaintiff's claims against the medical department are therefore barred as they are based upon an impermissible theory of liability.   *Iqbal*, 556 U.S. at 675-76.

Turning to Director Aviles and Deputy Director Castillo, Plaintiff has failed to allege sufficient conduct by Defendants to show that they had knowledge of the violations Plaintiff claims occurred and acquiesced to their occurrence.   While Plaintiff pleads a bare recitation of an acquiescence claim, the information he provides to support that claim falls short.   Plaintiff has only alleged that he sent letters to the Director and Deputy Director asking for clarification of the

12

basis for his placement into the cell he decries and asking that he be moved, long after he had already been placed into the cell.   Plaintiff alleges no response from these officials, or any other action on their part which could be said to demonstrate that these officials knew of the alleged violations or acted in such a manner that they could be said to have acquiesced to the actions of Sergeant Ford.   Plaintiff has likewise failed to plead that these Defendants were deliberately indifferent to his confinement conditions.   As Plaintiff has therefore failed to state a claim for which relief can be granted as to knowledge and acquiescence, *see Iqbal*, 556 U.S. at 678; *Barkes*, 766 F.3d at 319-20; *Queer*, 296 F. App'x at 295; *A.M.*, 372 F.3d at 586; *Rode*, 845 F.2d at 1207, and as these Defendants cannot otherwise be held liable under a theory of *respondeat superior* liability, *Iqbal*, 556 U.S. at 675-76, Defendants Aviles and Castillo must be dismissed without prejudice.

As to Lt. Yurecko, however, plaintiff has sufficiently pled a claim that the Defendant knew of and acquiesced in Plaintiff's allegedly punitive confinement.   In his complaint, Plaintiff specifically pleads that Yurecko was involved in the transfer or Plaintiff to the second cell in which he was confined, and was specifically aware of Ford's placement of Plaintiff into the original cell. As such, Plaintiff has pled facts which support the allegation that Yurecko knew of Plaintiff's confinement, and not only acquiesced in it but, to the extent that he helped move Plaintiff to the second cell, participated in that confinement.   Thus, as this Court will permit the conditions of confinement claim to proceed as detailed below, Plaintiff's claim for supervisor liability against Yurecko may proceed as well.   *Barkes*, 766 F.3d at 316-20; *Queer*, 296 F. App'x at 295; *A.M.*, 372 F.3d at 586; *Rode*, 845 F.2d at 1207.

### 3.   Plaintiff's Conditions of Confinement Claim against Sergeants Ford and Matos

Plaintiff raises a condition of confinement claim against Sergeants Ford and Matos. Plaintiff claims that Sergeant Ford determined, and Sergeant Matos enforced, Plaintiff's lock-up status in a cell which was not adequate in size to support an additional metal framed bed and the use of a wheelchair or crutches while Plaintiff was locked in his cell with a cellmate for twenty two or twenty three hours a day.   "When a pre-trial detainee claims that the conditions of his confinement violate his due process rights, 'the proper inquiry is whether those conditions [at issue] amount to punishment of the detainee.'"   *Carson v. Mulvihill*, 488 F. App'x 554, 559-60 (3d Cir. 2012) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).   In order to make that determination, the Court must consider whether the questioned restrictions "'are rationally related to a legitimate nonpunitive governmental purpose[,]' and 'whether they appear excessive in relation to that purpose.'"   *Id.* (quoting *Bell*, 441 U.S. at 561).   In determining whether a nonpunitive purpose exists, the Court must analyze whether any legitimate purpose is served by the conditions of confinement and whether those conditions are rationally related to those purposes.   *Id.*; *see also Hubbard v. Taylor*, 399 F.3d 150, 159 (3d Cir. 2005).

The Supreme Court has held that there is no requirement that a detainee be provided a single occupancy cell.   *Bell*, 441 U.S. at 542.   That said, the Court has also held that confining a number of individuals in so small a space that these individuals suffer "genuine deprivations and hardship over an extended period of time" raises questions as to whether those conditions amount to punishment.   *Id.*   The Third Circuit has likewise held that confinement in "unsanitary and humiliating" conditions, such as where bedding is placed beside toilets in small cells, is sufficient to impugn due process.   *See Union Cnty. Jail Inmates v. Di Buono*, 713 F.2d 984, 996 (3d Cir.

14

1983).   The Third Circuit has also held that where a plaintiff has pled that he was confined to a small cell with another inmate for "23 hours per day for 5 days out of the week, and for 32 hours over the course of the remaining two days of the week" resulting in psychological harm and a deprivation of privacy, that plaintiff's claim should proceed beyond screening.   *Southerland v. Cnty. Of Hudson*, 523 F. App'x 919, 921-22 (3d Cir. 2013).

Here, Plaintiff has pled that the Sergeants, and in turn through his acquiescence Lt. Yurecko, violated Plaintiff's due process rights by confining him in two small cells which he shared with a cellmate for twenty two to twenty three hours a day.   Plaintiff has also pled that this required that the foot of his bed, and, by extension, his surgery scar, be placed quite close to toilet facilities which may have exacerbated his infection.   Plaintiff complaint further compounds the issue by pleading that the small size of the cell made his use of crutches extremely difficult, which resulted in his injury when the crutches became caught in his bedding due to the cramped confinement conditions.   Plaintiff has therefore sufficiently pled his condition of confinement claim to survive screening, and that claim shall be allowed to proceed.   *See Southerland*, 523 F. App'x at 921-22; *Di Buono*, 713 F.2d at 996.

## 4.   Plaintiff's Deliberate Indifference to Medical Needs claims against Defendants Matos, Murtha, and Jane Doe

The final claim Plaintiff pleads is that Defendants Matos, Murtha, and Jane Doe were deliberately indifferent to his serious medical needs.   A pre-trial detainee's due process rights to medical care are "at least as great as the Eighth Amendment protections available to a convicted prisoner," and thus are violated where a convicted prisoner's Eighth Amendment rights would

15

have been violated. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244-45 (1983). Under the Eighth Amendment analysis, a prisoner's rights are violated where the official is deliberately indifferent to a prisoner's serious medical needs. *See Green v. Coleman*, 575 F. App'x 44, 47 (3d Cir. 2014); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987), *cert denied*, 486 U.S. 1006 (1988). A medical need is serious where it "'has been diagnosed by a physician as requiring treatment or [is] one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Green*, 575 F. App'x at 47 (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)). A prison official acts with deliberate indifference when the official recklessly disregards "a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009).

Here, Plaintiff has alleged that he received surgical care for a torn Achilles tendon. He alleges that this resulted in a scar which was covered by a bandage. Plaintiff also asserts that this scar became infected, and he was specifically told by doctors that the bandage needed to be changed on a daily basis. Plaintiff has therefore sufficiently alleged that he was subject to a serious medical need, as this need was both diagnosed and, as pled, would be fairly obvious to a lay person. *Green*, 575 F. App'x at 47. Plaintiff further alleges that, even after he made requests and explained why he needed medical care, both Officer Murtha and Sergeant Matos refused to escort him to medical or provided him with excuses as to why he would not be taken to have his bandage changed. Plaintiff has likewise pled that the Jane Doe nurse was directly asked to change the bandage, and refused claiming that it was the responsibility of a different nurse. Plaintiff has therefore sufficiently pled that Defendants Murtha, Matos, and Doe acted with reckless disregard for his medical claim to survive screening. *Id.* As such, Plaintiff's claim that Defendants

16

Murtha, Matos, and Doe were deliberately indifferent to Plaintiff's serious medical needs will be permitted to proceed at this time.

## 5.  Plaintiff's Application for Pro Bono Counsel

Plaintiff has also submitted an application for the appointment of pro bono counsel.  Under 28 U.S.C. § 1915(e)(1), a court may request that an attorney represent any person who is unable to afford counsel.  The courts have broad discretion to decide when a request for counsel is warranted.  *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002); *see also Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).  In exercising its discretion, the court is first called to assess whether a plaintiff's claims have merit, and if so, the court must make a determination after weighing factors which include: the litigant's ability to present his own case, the difficulty of the legal issues involved, the degree to which factual investigation will be necessary and the plaintiff's ability to conduct such investigation as is necessary, the litigant's ability to retain counsel on his own behalf, the extent to which the case will turn on credibility determinations, and whether the case will require expert testimony.  *Tabron*, 6 F.3d at 155-57; *Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011).  These factors are not exhaustive, and the Court is free to consider any other facts or factors it deems relevant.  *Montgomery*, 294 F.3d at 499.

Plaintiff requests counsel as he is not familiar with the rules of procedure, believes that discovery and depositions will need to be taken, and limited access to the law library, and has been unable to find or afford counsel on his own.  As discussed above, Plaintiff's conditions of confinement and deliberate indifference claims have been sufficiently pled to survive screening. The Court therefore examines Plaintiff's request under the *Tabron* factors.  Here, Plaintiff has

pled to relatively straightforward claims and in so doing has shown that he appears to understand the causes of action he has raised. The Court finds that it is unlikely that extensive discovery will be as necessary as Plaintiff suggests as the jail Defendants will likely provide all of the relevant documents in answering and defending against Plaintiff's claims. It also appears unlikely that expert testimony will be necessary at this time. Although the Court recognizes that credibility may be an issue and that Plaintiff does not have the means to afford an attorney given his *in forma pauperis* status, the Court does not find that the *Tabron* factors merit a request for counsel at this time. 6 F.3d at 155-57. Plaintiff's request will therefore be denied at this time; however, should Plaintiff be unable to complete discovery, or require other assistance at a later stage in the proceedings, he may reapply for counsel at that time.

## III. CONCLUSION

For the reasons stated above, plaintiff's claims against the Hudson County Jail and vicarious liability claim against the Jail's medical department are dismissed with prejudice; Plaintiff's supervisory liability claims against Defendants Aviles and Castillo are dismissed without prejudice; Plaintiff's conditions of confinement claim will proceed against Defendants Ford, Matos, and through supervisory liability, Yurecko; Plaintiff's deliberate indifference to a serious medical need claim will proceed against Defendants Matos, Murtha, and Jane Doe; and Plaintiff's request for pro bono counsel will be denied. An appropriate order follows.

Hon. Jose L. Linares, U.S.D.J.

18